feasibility and lack of intention to return are in error, then the remaining facts[6] relied upon by the district court are not sufficient to support the district court's ultimate finding of abandonment. Fairport concedes that the remaining findings of fact are supported by the record. Fairport only asserts that these findings of fact cannot support a finding of abandonment. The district court properly found that it was technologically feasible for Behrens to recover *Captain Lawrence*, but that he did not attempt or intend to attempt to do so. In addition, we note that Behrens described his vessel as a "total loss" on the Record of Casualty. These facts go far in supporting the district court's finding that the State clearly and convincingly proved that Behrens abandoned the *Captain Lawrence*. To the extent that Fairport casts doubt on the weight of the remaining findings of fact relied upon by the district court, we conclude that it is insufficient to render the district court's ultimate finding of abandonment clearly erroneous.

### IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[6]The remaining facts relied upon by the district court were: (1) the *Captain Lawrence* was a relatively recent wreck; (2) the *Captain Lawrence* sank in 40-60 feet of water; (3) Behrens valued the *Captain Lawrence* at $200; (4) Behrens had no insurance on the *Captain Lawrence* when it sank; (5) Behrens declined lifesaving assistance from the Coast Guard; and (6) Behrens died intestate. *Fairport IV*, 72 F. Supp. 2d at 798.

---

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0120P (6th Cir.)
File Name: 01a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FAIRPORT INTERNATIONAL EXPLORATION, INC.,
  *Plaintiff-Appellant,*

  *v.*

THE SHIPWRECKED VESSEL, known as the CAPTAIN LAWRENCE, in rem,
  *Defendant,*

STATE OF MICHIGAN,
  *Intervenor-Appellee.*

No. 99-2415

---

Appeal from the United States District Court for the Western District of Michigan at Marquette. No. 94-00164—Robert Holmes Bell, District Judge.

Argued: January 23, 2001

Decided and Filed: April 17, 2001

Before: BOGGS and MOORE, Circuit Judges; COHN, District Judge.[*]

---

[*] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

---

## COUNSEL

---

**ARGUED:** Michael L. Donner, Sr., CARTER, LEDYARD & MILBURN, Washington, D.C., for Appellant. Joshua W. Gubkin, STATE OF MICHIGAN, Lansing, Michigan, for Appellee. **ON BRIEF:** Michael L. Donner, Sr., CARTER, LEDYARD & MILBURN, Washington, D.C., for Appellant. Stephen F. Schuesler, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

---

## OPINION

---

BOGGS, Circuit Judge.  Plaintiff Fairport International Exploration, Inc. ("Fairport") appeals the district court's dismissal of its in rem admiralty action seeking to establish its right to a shipwrecked vessel, the *Captain Lawrence*.  For the following reasons, we affirm.

I

This is the latest installment in the ongoing saga of the *Captain Lawrence*, a boat that sank in 1933 near Poverty Island in northern Lake Michigan.  Built in 1898, the vessel was purchased in 1931 by Wilfred H. Behrens.  The *Captain Lawrence* met its demise when Behrens and his crew sailed from Milwaukee to northern Lake Michigan in an attempt to locate gold which, legend has it, sank in northern Lake Michigan during the Civil War.  Decades after the 1933 shipwreck and Behrens's death in 1959, Steven Libert, president of Fairport, learned of the legend of the lost gold. Libert discovered what he believes to be remains of the vessel during dives off Poverty Island in 1984 and 1985.  In 1993, the State of Michigan refused Libert's request to dredge an area of lake bed where he believes the *Captain Lawrence* is embedded.  In 1994, Behrens's heirs assigned to Fairport the

any artifacts recovered from within an injuncted area in the vicinity of the *Captain Lawrence*." *Ibid.*  In light of this fact, the district court made a credibility judgment that, "[a]fter years of disinterest and silence, the daughters' current recollections are undoubtedly colored by the potential of receiving some memento from their father." *Ibid.*  The district court did not summarily exclude the testimony of Behrens's daughters.  Rather, the court provided a detailed explanation for why the testimony was not reliable and lacked credibility.  After reviewing the testimony presented and the district court's reasons for not relying upon it, we conclude that the district court acted properly in finding that Behrens did not return or intend to return to salvage the *Captain Lawrence*.

Fairport's remaining argument as to this issue is that the district court incorrectly shifted the burden of proof from the State to Fairport as to whether Behrens returned or intended to return to salvage the *Captain Lawrence*.  Fairport claims that the State had the burden of proving this issue and that since the State did not present evidence as to this issue, the district court should have drawn an inference of non-abandonment in favor of Fairport.  This argument is without merit.  The State did not have the burden of proving that Behrens did not return or intend to return to salvage the *Captain Lawrence*; it had only the burden of proving by clear and convincing evidence that Behrens abandoned the *Captain Lawrence*.  In order to meet the burden of proving that Behrens did not return or intend to return to salvage the *Captain Lawrence*, the State would have to demonstrate an affirmative statement or action on Behrens's part indicating his intent not to return to Poverty Island to salvage his ship. This would mean that the State would have had the burden of proving express abandonment, a test that this court specifically refused to impose in this case. *Fairport III*, 177 F.3d at 499-500.

The remainder of Fairport's argument is based on the assertion that if the district court's findings of fact as to

difficult, it was technologically feasible for Behrens to recover the *Captain Lawrence*.[5]

The other finding of the district court challenged by Fairport is whether Behrens attempted or intended to attempt to salvage the remains of the *Captain Lawrence*. The district court concluded that "There was no evidence that Behrens ever returned to Poverty Island to attempt to salvage the *Captain Lawrence*, or even evaluate the feasibility of salvaging the vessel." *Fairport IV*, 72 F. Supp. 2d at 799. Fairport argues that the district court improperly excluded evidence of Behrens's subsequent trips to Poverty Island and of his intent to salvage the *Captain Lawrence* presented in the testimony of his daughters, Alice Bergmans and Gladys Nally.

The district court explained at length its decision to discount this testimony, concluded that the evidence was vague, ambiguous, and self-serving. The district court stated that the testimony was "based on very old and incomplete memories." *Id.* at 800. According to the court, it was "not clear from the testimony whether they are recalling their father's desire to engage in salvaging in upper Lake Michigan in general, or specifically to return to the *Captain Lawrence*." *Ibid.* Furthermore, the district court noted that pursuant to the Salvage Bill of Sale assigning the Behrens family's remaining rights to the *Captain Lawrence* to Fairport, "the family was to receive 20% in kind distribution of the property salvaged from the shipwreck and two percent in kind distribution of

---

[5]In addition, as the State rightly points out, even if it was *not* technologically feasible for Behrens to recover the *Captain Lawrence*, such a finding of fact could still be used to support the conclusion that Behrens abandoned the ship. Once Behrens would have realized that it was not technologically feasible to recover the *Captain Lawrence*, he may very well have lost hope of salvaging the vessel and have decided to abandon it. Therefore, even if Fairport could demonstrate that it was clearly erroneous for the district court to find that it was technologically feasible for Behrens to recover the *Captain Lawrence*, this error would not add much support to Fairport's argument that the district court's ultimate finding of abandonment was clearly erroneous.

exclusive right to salvage the remains of the vessel. The remaining facts of the case appear in this court's last encounter with the *Captain Lawrence*. *Fairport Int'l Exploration, Inc. v. The Captain Lawrence*, 177 F.3d 491, 493-94 (6th Cir. 1999). The pertinent facts related to the present appeal will be set forth during the course of this opinion.

## II

On June 27, 1994, Fairport initiated this proceeding in the United States District Court for the Western District of Michigan by filing an in rem admiralty action against the *Captain Lawrence*. The State of Michigan ("the State") intervened, asserting title to the wreck of the *Captain Lawrence* under the Abandoned Shipwreck Act, 43 U.S.C. §§ 2101-06 ("the ASA").[1]  The State moved to dismiss Fairport's action for lack of jurisdiction based on the Eleventh Amendment to the United States Constitution. The district court determined that jurisdiction depended on whether the ASA had transferred title to the *Captain Lawrence* to the

---

[1]The relevant portions of the ASA state:

(a)  United States title

    The United States asserts title to any abandoned shipwreck that is—

    (1) embedded in submerged lands of a State;

    . . . .

(c)  Transfer of title to States

    The title of the United States to any abandoned shipwreck asserted under subsection (a) of this section is transferred to the State in or on whose submerged lands the shipwreck is located.

43 U.S.C. § 2105.

State, a question that turned on whether the owner of the *Captain Lawrence*, Wilfred Behrens, had abandoned the vessel. The district court conducted an evidentiary hearing and later dismissed Fairport's action. *Fairport Int'l Exploration, Inc. v. The Captain Lawrence*, 913 F. Supp. 552 (W.D. Mich. 1995) ("*Fairport I*"). The court found that the State did not need to establish definitively that the vessel was abandoned. According to the court, the Eleventh Amendment would bar the suit if the State showed by a preponderance of the evidence that Behrens abandoned the *Captain Lawrence* and that, therefore, the State had a colorable claim to it. The district court concluded that the State met this standard and found that the State had a colorable claim of ownership of the *Captain Lawrence* under the ASA. As a result, the district court held that the Eleventh Amendment prohibited Fairport's action against the State.

Fairport appealed the district court's decision in *Fairport I*. This court affirmed the district court's ruling. *Fairport Int'l Exploration, Inc. v. The Captain Lawrence*, 105 F.3d 1078 (6th Cir. 1997) ("*Fairport II*"). On April 27, 1998, the United States Supreme Court vacated *Fairport II* and remanded the case to this court for proceedings consistent with the Supreme Court's holding in *California v. Deep Sea Research, Inc.*, 523 U.S. 491 (1998).

In *Fairport Int'l Exploration, Inc. v. The Captain Lawrence*, 177 F.3d 491 (6th Cir. 1999) ("*Fairport III*"), this court applied *Deep Sea Research* and remanded the case to the district court with instructions to apply the "clear and convincing evidence" standard in order to determine whether the State proved that Behrens abandoned the *Captain Lawrence* under the ASA. According to *Deep Sea Research*, it was improper for the district court to conclude that the Eleventh Amendment barred suit against the State once the State established that it had a colorable claim to the vessel. This court noted that *Deep Sea Research* "definitively instructs us that, if a State does not possess a shipwreck, the Eleventh Amendment does not prevent a federal court from

The evidence relied upon by Fairport simply is not enough to demonstrate that the district court clearly erred in its finding that it was technologically feasible for Behrens to recover the *Captain Lawrence* in 1933. It is true that in *Fairport I*, the district court stated that the *Captain Lawrence* was embedded, but the district court was referring to the present state of remains of the vessel. 913 F. Supp. at 556. At no time has the district court stated that the remains of the *Captain Lawrence* were embedded in bottomland immediately after the shipwreck or soon thereafter. Moreover, the district court noted in *Fairport IV* that, "portions of the wreckage, including a door, were found on Poverty Island. There is also evidence that the vessel was pounded to pieces. To the extent that portions of the vessel sank in the water, the testimony revealed that the wreckage allegedly associated with the *Captain Lawrence* is in 40 to 60 feet of water along the north coast of Poverty Island." 72 F. Supp. 2d at 798. In addition, the district court noted evidence in the record that, "the wreckage would not have been so widely scattered before the winter storms and the lapse of some 60 years." *Id.* at 799.

Fairport cannot rely on the district court's finding that the *Captain Lawrence* is presently embedded to support its argument that it was not technologically feasible for Behrens to recover the vessel. Evidence in the record supports the district court's finding that during Behrens's lifetime, portions of the ship were not embedded and could have been salvaged with the technology available to him. Fairport is left to rely solely on evidence relating to visibility on the lake bottom. That evidence was based on a dive made in 1994, over sixty years after the wreck of the *Captain Lawrence*. *Fairport I*, 913 F. Supp. at 555. The district court properly considered and discounted this evidence. The district court did not clearly err in concluding that, although it may have been

through a hose that supplied air from the surface. *Id.* at 799. The district court stated that "[t]here appears to be no dispute that a hard hat diver could have engaged in salvaging operations at depths of 40-60 feet. Moreover, the wreckage would not have been so widely scattered before the winter storms and the lapse of some 60 years." *Ibid.*

According to the district court, only evidence relating to visibility supported the possibility that it was not feasible to recover the *Captain Lawrence*. There was evidence in the record that walking of the lake bottom in lead boots would have stirred up silt on the lake bottom and reduced visibility to close to zero. However, the district court concluded that, "Although salvaging might have been more difficult in the days before SCUBA, the Court does not find that Behrens lacked access to the technology necessary to salvage the vessel." *Ibid.*

Fairport challenges these factual findings. Fairport states that the district court found in *Fairport I* that the *Captain Lawrence* was embedded in the bottom of Lake Michigan. 913 F. Supp. at 557. As a result, Fairport asserts that it would be impossible for hard hat divers of the 1930s, or for SCUBA divers, to locate the wreck. According to Fairport, the technology necessary to locate an embedded wreck is remote sensing technology, which allows salvagers to find wrecks embedded in the bottomland, but which was not available until the 1980s. Fairport also disputes the district court's statement regarding visibility. Fairport relies on the testimony of one of the State's witnesses, John Halsey, who stated that salvage under these conditions would be not just more difficult, but "almost impossible." Fairport asserts that since the remains of the *Captain Lawrence* were embedded and visibility for a hard hat diver on the lake bottom would be "almost impossible," the district court erred in concluding that it was technologically feasible for Behrens to recover the *Captain Lawrence* in 1933.

entertaining claims under the ASA to the shipwreck." *Fairport III*, 177 F.3d at 497. This court ordered the district court to "conduct only one 'abandonment' inquiry, [which] does not ask a preliminary jurisdictional question, but rather resolves whether Behrens abandoned the ship, and thus whether the ASA transfers title to Michigan." *Ibid.* The district court was instructed to "consider whether Michigan can prove that it owns the shipwreck--that is, whether clear and convincing evidence shows that Behrens abandoned the *Captain Lawrence*." *Id.* at 501.[2]

This court elaborated on the evidence that the district court was to consider when applying the clear and convincing evidence standard:

[T]he district court must reexamine, and supplement if necessary, the evidence adduced in the earlier proceedings . . . . In light of the conflicting evidence regarding whether Behrens had access to the technology necessary to salvage the ship, the lack of evidence concerning whether Behrens ever returned to Poverty Island, and the testimony regarding Behrens's intention to return, the district court must determine 'whether the evidence is fit to induce conviction in the minds of reasonable persons under this elevated, relatively stringent evidentiary standard.' *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 955 F.2d 1043, 1050 (6th Cir. 1992).

*Id.* at 501. In a footnote at the end of this passage, this court stated:

---

[2]The district court was instructed that the State "may prove abandonment by circumstantial evidence," but that the circumstantial evidence presented should be analyzed under the clear and convincing standard. *Fairport III*, 177 F.3d at 500.

While the record might support a logical inference that Behrens did not intend to reclaim his ship, it also appears to support a finding that Behrens passed away before he raised the funds to effect a salvage operation; his lack of overt efforts to claim the ship may comport as much with a concern for secreting the putative gold as with an intent to abandon the ship.

*Id*. at 501 n.4.

Following remand, on November 2, 1999, the district court again dismissed Fairport's claim. *Fairport Int'l Exploration, Inc. v. The Captain Lawrence*, 72 F. Supp. 2d 795 (W.D. Mich. 1999) ("*Fairport IV*"). The district court did not conduct an evidentiary hearing on remand. The court reviewed the existing record in the case, including the conflicting evidence noted by this court in *Fairport III*, and concluded that the evidence clearly and convincingly supported the conclusion that Behrens abandoned his vessel. Fairport timely filed a notice of appeal.

### III

Fairport argues that the district court should have conducted an evidentiary hearing before determining if the State could prove by clear and convincing evidence that the *Captain Lawrence* was abandoned. Fairport requests that we remand this case to the district court with instructions to conduct an evidentiary hearing. In the alternative, Fairport argues that the district court erred in concluding that the State proved by clear and convincing evidence that the *Captain Lawrence* was abandoned. We will address each of Fairport's arguments in turn.

### A

This court reviews a district court's decision not to conduct an evidentiary hearing for abuse of discretion. *See Cook v. American Steamship Co.*, 134 F.3d 771, 775 (6th Cir. 1998). Under this standard, this court will affirm the district court

Fairport claims that these two findings of fact,[4] however, were clearly erroneous and that, as a result, the district court's ultimate finding that Behrens abandoned the *Captain Lawrence* was clearly erroneous.

In concluding that it was technologically feasible for Behrens to recover the *Captain Lawrence* in 1933, the district court relied on a number of facts. The district court noted evidence indicating that the remains of the *Captain Lawrence* were accessible to Behrens. In the Report of Casualty, Behrens stated that a wind came up and threw the *Captain Lawrence* onto the beach. Fairport's president, Steven Libert, testified that portions of the wreckage, including a door, were found on Poverty Island. In addition, there was evidence that the vessel was pounded to pieces. Finally, to the extent that portions of the *Captain Lawrence* sank in the water, testimony revealed that the wreckage allegedly associated with the *Captain Lawrence* is in 40 to 60 feet of water along the north coast of Poverty Island. *Ibid.*

The district court also noted that Behrens had the capability of recovering portions of the wreckage of the *Captain Lawrence*. The district court stated that SCUBA, which was not invented until World War II and was not commonly used in the United States until the 1950s, would not have been necessary for Behrens to have used to recover the remains of the *Captain Lawrence*. *Id*. at 798-99. Evidence indicated that Behrens continued to engage in salvaging operations after the destruction of the *Captain Lawrence* and that he dove with a hard hat, a heavy suit, and lead boots, and breathed

---

[4]These two findings of fact correspond with the three issues on which this court noted the existence of conflicting evidence in *Fairport III*, namely (1) whether Behrens had access to the technology necessary to salvage the *Captain Lawrence*, (2) whether Behrens ever returned to Poverty Island, and (3) whether Behrens intended to return to Poverty Island. 177 F.3d at 501. The district court's finding that Behrens never attempted to salvage the *Captain Lawrence* subsumes both the issues of whether he ever returned, or intended to return, to Poverty Island.

witness for the State. Fairport contends that Pott's testimony was hearsay-within-hearsay, because his testimony was based on information in a newsletter published by the Wisconsin Marine Historical Society containing an historical account of the cost of salvage divers in 1936. Fairport's contention that this evidence is hearsay is without merit. Pott, a maritime archaeologist and curator of the Michigan Maritime Museum, testified as an expert witness. The basis for his opinion on salvage costs in the 1930s was of a type reasonably relied upon by experts in the field. Furthermore, Fairport did not object to Pott's testimony when it was given.

In light of the meager evidence presented by Fairport, the district court's proper determination not to give great weight to Bergmans's testimony, and the additional evidence relied upon by the district court in finding that Behrens could afford to salvage the *Captain Lawrence*, we conclude that the district court's finding that poverty did not prevent Behrens from attempting to salvage the *Captain Lawrence* was not clearly erroneous.

2

Fairport also claims that, regardless of the poverty hypothesis, the district court's finding that Behrens abandoned the *Captain Lawrence* was clearly erroneous. Fairport notes that in *Fairport IV*, the district court incorporated its findings of fact from *Fairport I*. The findings included the following: (1) the *Captain Lawrence* was a relatively recent wreck; (2) the *Captain Lawrence* sank in 40-60 feet of water; (3) it was technologically feasible to recover the *Captain Lawrence* in 1933; (4) Behrens valued the *Captain Lawrence* at $200 and wrote it off as a "total loss" on the casualty report he filed; (5) Behrens had no insurance on the *Captain Lawrence* when it sank; (6) Behrens declined lifesaving assistance from the Coast Guard; (7) Behrens never attempted to salvage the wreck; and (8) Behrens died intestate. *Fairport IV*, 72 F. Supp. 2d at 798. Fairport concedes all of these findings of fact except (3) and (7).

unless this court is left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 280 (6th Cir. 1991); *Davis v. Jellico Community Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990).

Fairport argues that the district court erred in not conducting an evidentiary hearing when this case was remanded to the district court pursuant to *Fairport III*. Fairport contends that the original evidentiary hearing conducted on April 12-13, 1995 was insufficient in light of the subsequent legal developments that occurred in the case. In addition, Fairport claims that this court "strongly hinted" that another evidentiary hearing may be helpful, when stating in *Fairport III*, "[W]e observe that the district court must reexamine, and supplement if necessary, the evidence adduced in the earlier proceedings." 177 F.3d at 501. In *Fairport III*, this court specifically mentioned that conflicting evidence existed as to whether Behrens: (1) possessed the technology to salvage the *Captain Lawrence*, (2) returned to Poverty Island, and (3) intended to return to salvage his ship. *Ibid.* Fairport claims that the fact that this court mentioned the existence of this conflicting evidence supports the need for another evidentiary hearing.

This court did not mandate that the district court conduct an evidentiary hearing on remand, however. That decision rested solely in the discretion of the district court. This court ordered the district court to reexamine the evidence presented in the earlier proceedings. The district court did indeed do so, including discussing the areas of conflicting evidence that this court described in *Fairport III*. This court also instructed the district court to supplement the evidence *if necessary*, leaving the final decision on conducting an evidentiary hearing in the hands of the district court.

In deciding not to conduct a second evidentiary hearing, the district court noted that given the increased burden placed on the State on remand, Fairport had no greater incentive to bring

evidence of non-abandonment than it had at the original evidentiary hearing:

> Because the State was held to a lower standard of proof at the [original] evidentiary hearing, Plaintiff had a strong incentive to make its best case on the issue of abandonment at the time of the original hearing. Because the State is now being held to a higher burden of proof, Plaintiff has no greater incentive on review than it had at the initial evidentiary hearing to bring forward evidence in support of its position of non-abandonment. The Court does not believe a second evidentiary hearing is necessary to protect Plaintiff's interests.

*Fairport IV*, 72 F. Supp. 2d at 797-98. The district court offered a rational explanation for its decision not to conduct a second evidentiary hearing in light of the higher burden of proof being applied to the State on remand.

The only case Fairport relies upon to support its position is *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98 (6th Cir. 1995). In that case, however, the district court granted summary judgment *sua sponte* without the non-moving party having had the opportunity to develop a record. *Id.* at 105. That, of course, is a much different situation than here, in which a record had been developed, new evidence had not come to light after the initial evidentiary hearing, and the case was returned to the district court to re-analyze the evidence under a different legal standard.

In *Fairport III*, this court did not mandate a second evidentiary hearing. In *Fairport IV*, the district court offered a rational explanation for why it believed a second evidentiary hearing was not necessary. In this appeal, Fairport has not presented a convincing legal argument that the district court abused its discretion in not conducting a second evidentiary hearing. Therefore, we conclude that the district court did not abuse its discretion in not conducting a second evidentiary hearing.

in light of this evidence of Behrens's alleged poverty, the State proved by clear and convincing evidence that Behrens intended to abandon the *Captain Lawrence*.

We agree with the district court's finding. The evidence Fairport relies upon to demonstrate that poverty prevented Behrens from recovering the *Captain Lawrence* is meager. Most of the evidence does not even address Behrens's financial status after the wreck of the *Captain Lawrence*. The most substantial portion of the evidence as to this point was the testimony of Bergmans. However, the district court determined that it would not give the testimony much weight, stating that it was "based on very old and incomplete memories" and was of a "self-serving nature." 72 F. Supp. 2d at 800. Upon review of Bergmans's testimony and the district court's explanation for why it did not believe the testimony was credible, we conclude that the district court acted properly in not according it significant weight.

Fairport claims that the district court's only[3] other attempt to address the poverty hypothesis was noting that in 1936 a salvage diver charged approximately $100 per day for Lake Michigan salvage from a rental boat. *Id.* at 799. This evidence was placed into the record by Kenneth R. Pott, a

---

[3] The district court also noted that "Poverty Island is not located out in the middle of Lake Michigan. It is in a chain of islands, stretching south from the Garden Peninsula of Michigan to the Door Peninsula of Wisconsin and could be easily accessed from Michigan or Wisconsin." 72 F. Supp. at 799. The district court appeared to be indicating that the proximity of the island to the shorelines of Michigan and Wisconsin would have enabled Behrens to purchase a cheaper craft to salvage the ship. Fairport claims that "[t]his contention is belied by the record, which shows that the *Captain Lawrence* itself sank close to shore." Plaintiff-Appellant's Brief at 17. It appears that Fairport is arguing that since the *Captain Lawrence*, a more substantial craft, sank near Poverty Island in poor conditions, a cheaper craft could not have been used to salvage the ship in normal conditions. This argument is specious. Although the Titanic was sunk by an iceberg, lifeboats were still able to navigate the icy waters of the North Atlantic to save its passengers.

Behrens paid $150 for the *Captain Lawrence* and recorded his loss in the Record of Casualty at $200. New boats ranged in value from $165 for an 8-foot dinghy, $1200 for a 22-foot outboard motor launch, $2500 for a 40-foot schooner, and $14,500 for a 60-foot schooner similar to the *Captain Lawrence*. In addition, Behrens was unable to afford insurance on the *Captain Lawrence*.

(3) In *Fairport I*, the district court found that "[Behrens's daughters] recalled that he would go up north on diving expeditions . . . and that he was concerned about getting funds to finance an expedition." 913 F. Supp. at 555.

(4) Alice Bergmans, Behrens's daughter, testified that: (1) when Behrens died he was so poor that other family members had to pay to bury him; (2) Behrens "mentioned his boat, the *Captain Lawrence*, and he was trying to finance it so that he could go back and repair it or do something to it;" (3) "I don't think he ever gave up the thought of it because he was trying to get money to do it, and I don't think he ever gave it up because he always talked about his boat . . . .;" (4) "I think that's where he did go [the *Captain Lawrence* wreck site] to try to make arrangements and everything, but it was the money that he had to get his crew together and everything."

The district court was not required to consider this evidence as a hypothesis to be weighed against a separate hypothesis that Behrens abandoned the *Captain Lawrence*. Rather, the district court was to consider this evidence in light of the remaining evidence presented by the State in order to prove that Behrens abandoned the *Captain Lawrence*. This is precisely what the district court did in concluding that, even

B

In reviewing the district court's determination that the State proved by clear and convincing evidence that the *Captain Lawrence* was abandoned, we note that a factual determination of the district court will not be overturned by this court unless it is clearly erroneous. A factual determination is clearly erroneous if, upon review of the entire evidence, this court is level with the definite and firm conviction that a mistake was committed. *See Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1399 (6th Cir. 1995). This court normally gives great deference to the district court's factual determinations since the district court is in a superior position to appraise the evidence and to judge the credibility of witnesses. *See ibid.*

When this court remanded this case to the district court to determine if the State had proven by clear and convincing evidence that the *Captain Lawrence* was abandoned, the district court was instructed that the State may prove by inference that a shipwreck last owned by a private party was "abandoned." *Fairport IV*, 72 F. Supp. 2d 795, 797 (citing *Fairport III*, 177 F.3d at 500). This court noted that neither lapse of time nor an owner's failure to return, standing by themselves, will necessarily establish abandonment. *Ibid.* Instead, these may be part of a combination of facts that may support a finding of abandonment if, taken together, they clearly and convincingly show that abandonment occurred. *Fairport III*, 177 F.3d at 500.

In remanding the case to the district court, this court noted several facts about which there existed conflicting evidence, namely: (1) whether Behrens had access to the technology necessary to salvage the ship, (2) whether Behrens ever returned to Poverty Island, (3) whether Behrens intended to return, and (4) whether a lack of funds or "a concern for secreting the putative gold" explained why Behrens did not attempt to salvage the ship. *Id.* at 501 & n.4. Fairport

challenges the district court's findings as to each of these facts. First, Fairport claims that the district court did not "clearly and convincingly exclude the hypothesis that it was poverty, not an intent to abandon, that kept Behrens from returning to salvage the *Captain Lawrence*." Plaintiff-Appellant's Brief at 12. Second, Fairport claims that the district court erred in its factual findings that Behrens had access to the technology necessary to recover the *Captain Lawrence* and that Behrens did not attempt or intend to attempt to salvage the *Captain Lawrence*. As a result of these errors, Fairport claims that the district court erred in its ultimate finding that the State clearly and convincingly proved that the *Captain Lawrence* was abandoned. We will first address Fairport's arguments regarding the poverty hypothesis and then address Fairport's arguments regarding the district court's finding of abandonment.

### 1

Fairport argues that this court's language in footnote four of *Fairport III* indicates that this court intended that the district court weigh the hypothesis that it was poverty that caused Behrens not to attempt to recover the *Captain Lawrence* with the hypothesis that Behrens abandoned the ship. Fairport contends that the district court erred by not weighing these hypotheses.

Before considering Fairport's argument that the district court did not adequately weigh the competing hypotheses, we must address Fairport's initial assertion that this court directed a weighing of hypotheses. Nowhere in *Fairport III* did this court state that the district court was required to weigh the poverty hypothesis against the abandonment hypothesis. Nor did this court direct the State to disprove the poverty hypothesis by clear and convincing evidence. The test was clearly stated: The State had to prove clearly and convincingly that Behrens abandoned his ship. This court noted that evidence in the record might support a finding that Behrens was unable to raise the funds necessary to attempt to

recover the ship, but this brief mention in a footnote cannot be interpreted as Fairport would have it. *Fairport III*, 177 F.3d at 501 n.4. It was not necessary for the district court, nor is it necessary for this court, to engage in a weighing of hypotheses. It also was not necessary for the district court, nor is it necessary for this court, to force the State to disprove the poverty hypothesis by clear and convincing evidence. Such a standard has no support in the ASA or in case law.

While it was not necessary for the district court to engage in a weighing of hypotheses, it was appropriate for the district court to consider evidence that poverty or a motivation to conceal the putative gold explains why Behrens did not return to the ship. The district court did consider this evidence and concluded that it was not sufficient to prevent the court from finding that Behrens abandoned the *Captain Lawrence*. On appeal, we review the evidence Fairport presents regarding Behrens's alleged poverty not to weigh the evidence against that of abandonment, but to consider whether the evidence is so strong as to undermine the district court's ultimate finding of abandonment.

Fairport relies on the following evidence to support its theory that it was poverty, not an intent to abandon, that prevented Behrens from salvaging the *Captain Lawrence*:

(1) The district court found in *Fairport I* that Behrens, after 1933, never owned "another boat worthy of the lake waters around Poverty Island." 913 F. Supp. at 555.

(2) Before Behrens set out on his fateful voyage, he did not purchase a new boat, but instead he purchased the *Captain Lawrence*, a boat built in 1898 that had been raised from the bottom of the Menominee River in 1931. At the time he purchased it, the *Captain Lawrence* had depreciated to a fraction of what Behrens would have had to spend on a comparable new boat.