**ASSOCIATED INDEMNITY CORPO-RATION, a California Corporation, and the American Insurance Company, a Nebraska Corporation, Plaintiffs,**

v.

**The DOW CHEMICAL COMPANY, a Delaware Corporation Defendant.**

**The Dow Chemical Company, a Delaware Corporation Plaintiff,**

v.

**Fireman's Fund Insurance Company, a California Corporation, et. al., Defendants.**

**Nos. 99–76397, 99–76398.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 20, 2003.

George B. Mullison, Smith & Brooker, P.C., Bay City, MI, Donald A. Vogelsang, Grippo & Elden, Chicago, IL, for Plaintiffs.

Scott Scarpelli, Dow Chemical Company, Midland, MI, for Defendant.

## OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on the following motions: 1) The Home Insurance Company's[1] Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Magnolia, Arkansas, Focus Site; 2) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Pittsburg, California, Focus Site; 3) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Plaquemine, Louisiana, Focus Site; 4) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Midland, Michigan, Focus Site; 5) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Freeport, Texas, Focus Site; 6) Certain[2] Defendants' Motion for Summary Judgment Based Upon Late Notice; and 7) Dow Chemical's Motion for Summary Judgment Concerning Timeliness of Notice. All motions have been fully briefed. The Court finds that the parties have adequately set forth the relevant law and facts, and that oral argument would not aid in the disposition of the instant motions. *See* E.D. MICH. LR 7.1(e)(2). Accordingly, the Court ORDERS that the motions be decided on the briefs submitted. For the reasons stated herein: 1) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution

---

1. The Court should note that at the time the motions for summary judgment were submitted in this matter, Certain Defendants had a co-Defendant named The Home Insurance Company (hereinafter "Home Insurance"). Home Insurance submitted briefs in opposition to Dow Chemical's motions for summary judgment. In addition, Home Insurance submitted a number of motions for partial summary judgment. Certain Defendants filed a notice of joinder on all but one of Home Insurance's motions; Certain Defendants did not file a notice of joinder on Home Insurance's Motion for Partial Summary Judgment: Allocation of Damages (All Sites).

Since that time, Home Insurance has settled in substance with Dow Chemical, and subsequently withdrew all of its motions for partial summary judgment. The Court, however, shall consider all but one of Home Insurance's motions for partial summary judgment because Certain Defendants joined those motions. The Court shall not consider Home

Insurance's Motion for Partial Summary Judgment: Allocation of Damages (All Sites) because Certain Defendants did not join in that motion.

Home Insurance did not withdraw any of its briefs in response to Dow Chemical's motions. Because these briefs are now a part of the case file, and because they will assist the Court in resolving the present dispute, the Court shall consider Home Insurance's briefs in opposition to Dow Chemical's motions.

2. "Certain Defendants" include the following: AIU Insurance Company; American Home Assurance Company; Birmingham Fire Insurance Company; Granite State Insurance Company; Insurance Company of the State of Pennsylvania; and National Union Fire Insurance Company of the State of Pittsburgh, PA [sic]. Hereinafter, these Defendants shall be referred to as "Certain Defendants." In addition, the Dow Chemical Company shall hereinafter be referred to as "Dow Chemical."

Exclusions to the Magnolia, Arkansas, Focus Site is DENIED; 2) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Pittsburg, California, Focus Site is GRANTED; 3) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Plaquemine, Louisiana, Focus Site is GRANTED; 4) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Midland, Michigan, Focus Site is GRANTED; 5) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Freeport, Texas, Focus Site is GRANTED; 6) Certain Defendants' Motion for Summary Judgment Based Upon Late Notice is GRANTED; and 7) Dow Chemical's Motion for Summary Judgment Concerning Timeliness of Notice is DENIED.[3]

## II. BACKGROUND

In 1999, Dow Chemical filed a complaint against a number of insurance companies, including Certain Defendants, seeking indemnification concerning a number of environmental liabilities associated with twenty-five of Dow Chemical's manufacturing facilities located throughout the world. In short, Dow Chemical alleges that it obtained a number of general liability insurance policies between 1944 and 1984. Dow Chemical also alleges that it is defending, or has defended, against a large variety of actions arising out of property damage, bodily injury, and personal injury that was caused by materials stored, generated, or disposed of, by or on behalf of Dow Chemical at various geographic locations. *See* Dow Chemical's Complaint ¶ 36. Dow Chemical filed this action seeking indemnification from its insurers based upon these liabilities it has incurred. Presently, only Certain Defendants remain in this action. Certain Defendants supplied Dow Chemical with a number of "excess" general liability insurance policies.

This action was originally assigned to the Honorable Victoria A. Roberts. On June 21, 2000, Judge Roberts entered "Case Management Order No. 1" (hereinafter "CMO"). The CMO divided this action into a number of phases; currently before the Court is Phase One. Phase One is concerned only with five of the twenty-five manufacturing sites at issue: Magnolia, Arkansas; Pittsburg, California; Plaquemine, Louisiana; Midland, Michigan; and Freeport, Texas.

The Court shall now consider each of the motions individually, and shall develop the facts more in each individual section of this opinion and order.

## III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a

---

**3.** In addition to these motions, the following motions were submitted: Certain Defendants' Motion for Summary Judgment Based Upon Prior Release of Certain Sites; Certain Defendants' Motion to Strike the Affidavit of William H. Herr; Certain Defendants' Motion for Summary Judgment based upon a Lack of Justiciability; Dow Chemical's Motion for Summary Judgment Concerning the Insurers' Legal Obligation to Pay Remedial Costs as "Damages;" and Dow Chemical's Motion for Summary Judgment Concerning the "Owned Property" and "Alienated Premises" Exclusions. The Court shall not address these motions because they are moot.

jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Philip Morris Co.*, 8 F.3d 335, 339–40 (6th Cir.1993).

## IV. ANALYSIS

Due to the vast number of motions, and the factual complexity behind this matter, the Court shall address each motion in its own section of this opinion and order. Presently, however, the Court shall review the actual coverage provided by the relevant insurance contracts.

### A. Coverage

The Court reviewed the large amount of materials submitted in this matter. Among the materials submitted were copies of several of the excess insurance policies that were issued by various insurers. When discussing the issue of coverage, the excess insurance polices basically state that they will provide Dow Chemical with all of the same insurance coverage as the underlying primary insurance contracts. A typical example of such an underlying primary insurance contract provides the following coverage:

> Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured of all sums which the Assured shall be obligated to pay by reason of the liability:
>
> (a) imposed upon the Assured by law,
> . . .
>
> for damages on account of:-
> (i) Personal Injuries
> (ii) Property Damage
> (iii) Advertising Liability,
>
> caused by or arising out of each occurrence happening anywhere in the world.

"Occurrence" is defined in the primary insurance contract as follows:

> an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

Under this definition of "occurrence," Dow Chemical may only recover on one of Certain Defendants' insurance policies if an injury occurred during the policy period: the accident must "result[ ] in personal

injury, property damage or advertising liability during the policy period." Thus, if the accident, or exposure to pollution, occurred before the policy period began, then Dow Chemical may only be able to recover on an insurance policy if the injury or damage subsequently occurred during the policy period. Conversely, Dow Chemical cannot recover if the accident or exposure occurred during the policy period, but the injury or damage did not occur until after the policy period expired. This interpretation of the policy language is consistent with the Michigan Supreme Court's decision in *Gelman Sciences, Inc. v. Fid. & Cas. Co. of N.Y.*, 456 Mich. 305, 572 N.W.2d 617, 623 (1998).

In short, barring the applicability of any conditions or limitations, Certain Defendants must provide insurance coverage to Dow Chemical for any liability arising out of an "occurrence" that Dow Chemical incurred anywhere in the world. Every one of Certain Defendants' excess insurance contracts, however, contained a pollution exclusion. Therefore, Certain Defendants are only obligated to provide Dow Chemical with insurance coverage for liability that Dow Chemical incurred arising out of any occurrence that does not fall within the pollution exclusion. These pollution exclusions are the subject of a series of motions for partial summary judgment.

## B. Pollution Exclusions

Home Insurance brought five motions for partial summary judgment relating to the pollution exclusions that are contained in the insurance contracts at issue. These motions for partial summary judgment respectively relate to all five focus sites. Certain Defendants joined in these motions before Home Insurance settled in substance with Dow Chemical, therefore, the Court shall presently consider these motions.

### 1. Legal Standard

■ All of the general liability excess insurance policies that Certain Defendants sold Dow Chemical between June 11, 1971, and December 1, 1984,[4] contain a pollution exclusion clause.[5] The relevant language of these pollution exclusion state that the insurance provided under the policy:

> ... does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water; but this exclusion does not apply if such discharge,

---

**4.** Although Certain Defendants issued Dow Chemical insurance policies from 1971 through 1987, Dow Chemical only alleges coverage for policies that were issued from 1971 through 1984. In its Complaint, Dow Chemical did not make any claims on any of the insurance policies that were issued by the Insurance Company of the State of Pennsylvania (hereinafter "ISOP") that provided coverage beginning on January 1, 1983, or any policy issued by ISOP that began providing coverage on a later date. Because Dow Chemical does not seek coverage on any policy that provides coverage after December 1, 1984, the relevant policy period is from 1971 through 1984.

**5.** Attached to Certain Defendants' Joinder to Home Insurance's motions for summary judgment regarding the pollution exclusions is a document entitled Exhibit A. Certain Defendants state that Exhibit A lists all of the insurance policies that it sold to Dow Chemical. Certain Defendants also state that each of the policies listed in Exhibit A either contains or incorporated a pollution exclusion clause that is substantially similar to the one quoted in the main text. Although no party has produced a copy of each of these policies, the Court notes that Dow Chemical does not object to any of Certain Defendants' representations on these matters.

dispersal, release or escape is sudden and accidental.

In the present action, it is not disputed that all of the liability that Dow Chemical accrued is the result of "pollution." Consequently, by the terms of the pollution exclusion clauses, it is presumed that Certain Defendants have no duty to indemnify Dow Chemical. As stated by the Sixth Circuit, "where the coverage is subject to a pollution exclusion clause, ... the burden is on the insured to demonstrate that the accidents were sudden and accidental, since the presumption is that there is no duty to provide coverage of any sort." *See Employers Ins. of Wausau v. Petroleum Specialties*, 69 F.3d 98, 102 (6th Cir.1995) (citing *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1020 (6th Cir.1995) ("When a policyholder seeks to invoke the 'sudden and accidental' clause, the policyholder has the burden of proof, both the burden of producing evidence and the burden of persuasion, as to whether the 'sudden and accidental' exception to the pollution exclusion applies.") (quoting *Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.*, 702 F.Supp. 1317, 1329 (E.D.Mich. 1988))). In other words, to succeed with its motions, Certain Defendants need not support its motion with evidence disproving Dow Chemical's claim, "but need only 'show'—that is point out to the [Court]—that there is an absence of evidence to support [Dow Chemical's] case." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

This also means that in order to avoid summary judgment, Dow Chemical must come forward with more than a mere scintilla of evidence in order to support its position; Dow Chemical must present "evidence on which the jury could reasonably find for [Dow Chemical]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The mere possibility of factual dispute is not enough. *Id.* (quoting *Mitch-*

*ell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992)). Instead, the pivotal question is whether the party bearing the burden of proof, Dow Chemical, has presented a jury question as to each element of its case. *See id.*

■ Any occurrence that Dow Chemical seeks insurance coverage for must fall within the "sudden and accidental" exception to the pollution exclusion. Under Michigan law, there are two steps for determining whether an occurrence falls within the "sudden and accidental" exception. First, Dow Chemical must separately identify any "sudden and accidental" discharges if there existed a larger pattern of discharges at a particular focus site. In determining whether Dow Chemical has met this burden, the Court shall evaluate the following four factors:

(1) whether the "sudden and accidental" occurrences are purportedly identifiable and isolated;

(2) whether the "sudden and accidental" occurrences were arguably different in kind than the overall leakage;

(3) whether specific damage can arguably be traced back to the "sudden and accidental" outbreaks; and

(4) whether Dow Chemical is able to actually present evidence of the "sudden and accidental" occurrence.

*See S. Macomb Disposal Auth. v. Am. Ins. Co.*, 225 Mich.App. 635, 572 N.W.2d 686, 706 (1997); *Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 10 F.Supp.2d 771, 778–779 (E.D.Mich.1998).

Once the Court determines if Dow Chemical has met this burden, the second step is for the Court to determine whether there is a genuine issue of material fact as to whether these separate and identifiable occurrences meet the Michigan Supreme Court's definition of "sudden" and "accidental." *See Aetna Cas. & Sur. Co.*, 10

F.Supp.2d at 779 (citing *S. Macomb,* 572 N.W.2d at 706–707). In other words, in order to survive summary judgment:

> Dow [Chemical] must present evidence that at each [Focus Site]: (1) there was a discrete, identifiable, isolated discharge or release that can be separated from the historical, ongoing, gradual discharges or releases of pollution or contaminants that occurred in the normal course of operation; (2) each of those discrete discharges can be considered "sudden and accidental" as defined by the Michigan Supreme Court; and (3) that some of the relevant damage at a particular site arguably may be traced to these discrete "sudden and accidental" discharges.

*Aetna Cas. & Sur. Co.,* 10 F.Supp.2d at 780 (citing *S. Macomb,* 572 N.W.2d at 686; *Petroleum Specialties;* 69 F.3d at 98).

■ In *The Upjohn Co. v. N.H. Ins. Co.,* 438 Mich. 197, 476 N.W.2d 392, 397–398 (1991), the Michigan Supreme Court clarified that "sudden and accidental," as it applied to a pollution exclusion clause, is an unambiguous term and defined it in the following manner:

> when considered in its plain and easily understood sense, "sudden" is defined with a "temporal element that joins together conceptually the immediate and unexpected." The common everyday understanding of the term "sudden" is "happening, coming, made or done quickly, without warning or unexpectedly; abrupt." "Accidental" means "occurring unexpectedly and unintentionally; by chance."

*Upjohn,* 476 N.W.2d at 397–398 (citations and quotations omitted). The critical inquiry is whether the separate and independent discharges were expected. *See Aetna Cas. & Sur. Co.,* 10 F.Supp.2d at 780. Furthermore, Dow Chemical's actions are to be evaluated under an objective rather than a subjective standard, *see S. Macomb,*

225 Mich.App. at 681, 572 N.W.2d 686, and under the imputed collective knowledge doctrine, "knowledge acquired by employees within the scope of their employment is imputed to the corporation." *See Upjohn,* 476 N.W.2d at 400. In making its inquiry, the Court is to focus on the release of the pollutant from its place of containment into the environment, *see S. Macomb,* 572 N.W.2d at 703, and evidence of the pollutant container's design, licensing, and past violations is probative as to whether there was an expectation of containment. *See Aetna Cas. & Sur. Co.,* 10 F. Supp 2d at 780.

## 2. Analysis—Pittsburg, California, and Freeport, Texas

The Court shall now apply the above listed pollution exclusion to the different Focus Sites; the Court shall presently consider the Pittsburg, California, and Freeport, Texas, Focus Sites. The Court shall consider these together because Dow Chemical did not address Home Insurance's motions regarding either of these Focus Sites.

The Court begins its analysis by noting that it is presumed that Dow Chemical is not entitled to insurance coverage because of the operation of the pollution exclusion clauses. *See Petroleum Specialties,* 69 F.3d at 102. Therefore, it was not necessary for Home Insurance to present any facts—other than the fact that the general liability insurance contracts that it sold Dow Chemical from 1971 through 1978 contained pollution exclusion clauses—in order to be successful on its motions for summary judgment. Home Insurance, however, is no longer a party to this action. Instead, Certain Defendants joined in Home Insurance's motions, and is now, in effect, the moving party.

The insurance contracts that Certain Defendants sold to Dow Chemical contain pollution exclusion clauses that are largely

similar to the pollution exclusions contained in Home Insurance's contracts. Certain Defendants' contracts, however, cover a different time span; Certain Defendants' contracts cover 1971 through 1984. Although Home Insurance's briefs in support of its motions for partial summary judgment are specific to the time span of its insurance contracts, namely 1971–1978, that fact is irrelevant because the burden is on Dow Chemical to present sufficient evidence to make a prima facie case that the pollution exclusion clauses in Certain Defendants' insurance contracts are inapplicable.

Dow Chemical fails to point out any evidence that creates a genuine issue of material fact regarding either the Pittsburg, California, Focus Site, or the Freeport, Texas, Focus Site.[6] For that reason, The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Pittsburg, California, Focus Site is GRANTED, and The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Freeport, Texas, Focus Site is GRANTED. Dow Chemical is barred from receiving any insurance coverage at these locations from Certain Defendants during the relevant time frame—namely 1971 through 1984—because of the application of the pollution exclusion clauses.

### 3. Magnolia, Arkansas

Dow Chemical alleges that there were two "sudden and accidental" occurrences at the Magnolia, Arkansas, Focus Site: a EDB tank that was located in Area A–10 failed in 1971; and a DBCP tank that was located in Area A–19 that failed in 1978–79. The Court shall discuss each incident in turn.

### a. 1971 Area A–10 EDB Tank Failure

■ In the early 1970s, Area A–10 at the Magnolia, Arkansas, site contained a small tank that Dow Chemical used to store ethylene dibromide (hereinafter "EDB") tars and sludge. Dow Chemical essentially alleges that the tank "cracked," as opposed to corroded, and that the crack led to the spill of contaminants; Dow Chemical gives no reason for why the tank cracked. Dow Chemical also argues that in 1987, a Pre–Sale Environmental Assessment was performed, which revealed that there was still contamination in the area where the EDB tank was located.

Certain Defendants counter by pointing to Michigan law. Under Michigan law, in an area where there is a pattern of ongoing pollution, insurance coverage for liabili-

---

**6.** The Court notes that in Dow Chemical's consolidated response to Home's motions for summary judgment that Dow Chemical concedes that it does not seek coverage for the Freeport, Texas, Focus Site.

As for the Pittsburg, California, Focus Site, Dow Chemical concedes that the "sudden and accident events [Dow Chemical] identifies at its Pittsburg, California[,] site occurred after Home's Coverage Period." Dow Chemical does state, however, that these sudden and accidental events may be "covered by the policies of some of the Certain Defendants whose policies extend beyond June 11, 1978." But, Dow Chemical then fails to discuss these sudden and accidental events despite the fact

that Certain Defendants filed a notice of joinder in Home Insurance's motions, and despite the fact that Certain Defendants need not do any more than demonstrate that their insurance contracts contain a pollution exclusion clause, which they in fact do. Further, Dow Chemical recognized the fact that Certain Defendants filed this joinder. Dow Chemical recognizes this joinder in a number of places, for instance, Dow Chemical discusses it on page 27 of its consolidated response. Thus, Dow Chemical waived its right to contest Home Insurance's motion to the extent that Certain Defendants joined in that motion, which is why the motion will be granted in favor of Certain Defendants.

ty resulting from environmental damage may only be had if the discharge is separately identifiable from the larger pattern of pollution, and that the specific damage may be traced to the discharge. *See South Macomb*, 572 N.W.2d at 706. Certain Defendants point out that in addition to the EDB tank that was located in Area A–10, Dow Chemical would store drums that were filled with EDB tar at that location as well. Evidence demonstrates that some of those drums leaked, thus causing more EDB to be spilled into the environment.

■ The Court agrees that under Michigan law, in order for an insured to obtain insurance coverage for liability arising out of environmental damage, it is necessary for the insured to demonstrate that specific damage may be traced to a separate and identifiable discharge. *See id.* The fact that there is another potential source of pollution, however, does not necessarily bar Dow Chemical from recovery. For instance, in *S. Macomb*, there was a large pattern of pollution, however, the court noted that "[t]he evidence supports plaintiff's position that some of the contamination and damage was attributable directly to these three ... outbreaks." *Id.* Presently, there is a good deal of evidence—including deposition testimony by Certain Defendants' expert witness, Yaron Sternberg—that indicates that the failure of the EDB tank was at least part of the source of the pollution at Area A–10. Therefore, Dow Chemical may be entitled to recovery, and this argument fails.

Certain Defendants also argue that there is little evidence to support Dow Chemical's assertion that the tank had "cracked," rather, Certain Defendants maintain that the EDB tank had corroded. Dow Chemical counters by presenting evidence of the that the tank was constructed out of epoxy phenolic asbestos, and that such material is not susceptible to corro-

sion. *See* Dep. of J.L. Creed, 110. Thus, Dow Chemical produced enough evidence to demonstrate that the tank cracked, and that the release was sudden and accidental. Accordingly, this argument also fails. Therefore, Dow Chemical survives summary judgment on this issue. Certain Defendant's motion for summary judgment as to the application for the pollution exclusion is DENIED as to the 1971 EDB tank spill at the Magnolia, Arkansas, Focus Site.

### b. 1978–79 Area A–19 DBCP Tank Failure

Sometime 1978 or 1979, a tank that contained Dow Fumazone (hereinafter "DBCP") was discovered to have a leak in it. In its motion for partial summary judgment, Home Insurance did not contest whether the release was sudden or accidental, rather, Home Insurance argued that, based on all the evidence, that the release occurred after the time Home Insurance's last insurance policy expired in June 1978. As stated above, Certain Defendants joined in Home Insurance's motion, however, Certain Defendants did not add to Home Insurance's motion in any way. Thus, in effect, Certain Defendants are presently arguing that Dow Chemical is not entitled to insurance coverage for the release of DBCP that occurred in 1978–79 because that event occurred outside of Home Insurance's policy period. It is obvious that this argument fails. Certain Defendants' last insurance policy did not expire until December 1, 1984. For purposes of this motion, the Court finds that Certain Defendants do not contest whether this event was sudden and accidental. Accordingly, the Court shall DENY Certain Defendants' motion as to the discharge from the DBCP tank that occurred in 1978–79.

#### c. Conclusion

For the reasons set forth above, Certain Defendants' Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Magnolia, Arkansas, Focus Site is DENIED.

#### 4. Analysis—Plaquemine, Louisiana

Dow Chemical contests Home Insurance's motion regarding the Plaquemine, Louisiana, Focus Site. In its motion, Home Insurance argues that Dow Chemical points to only one occurrence from 1971 through 1978—which is the duration of Home Insurance's contracts—that could constitute a "sudden and accidental" occurrence: the collapse of an HC1 tank that occurred in "the early '70s." In addition, Home Insurance and Dow Chemical both discuss "the Vinyl II Tanks," which was also known as the Vinyl II Block.

#### a. HCl Tank

■ The first sudden and accidental occurrence is the collapse of an HCl tank that occurred in "the early '70s." The date of the actual collapse is uncertain, as Dow Chemical does not have any written records of the collapse. Rather, Dow Chemical produces the following evidence of the collapse: 1) an eyewitness, Mr. Gerry Daigre, who stated that he saw the collapse occur sometime in "the early '70s—you know '71, '72 I would guess;" 2) a statement by Ms. Jill McCullough, who states that in "the early '70s" an HC1 tank collapsed and leaked severely, and 3) an expert report by Mr. Steven Larson, which, Dow Chemical asserts, reports that there are remediation efforts taking place in the vicinity of where the tank would have been.[7]

Certain Defendants contest whether this collapse actually occurred, and, even if it did, Certain Defendants argue that there is no evidence that demonstrates that the collapse of said tank actually resulted in any liability. In response, Dow Chemical states that it produced evidence of both the collapse, and of the liability that resulted from the collapse. The Court notes that although Dow Chemical did introduce evidence to support its assertion that an HC1 tank collapsed in the "early 70s," Dow Chemical must do more in order to survive summary judgment.

First, the Court notes that Dow Chemical does not present evidence that demonstrates that any particular damage can be traced to the collapse of the HC1 tank. Although Dow Chemical points to the expert report of Mr. Larson, the Court reviewed Mr. Larson's report, and cannot identify which contamination resulted from, or which remediation efforts were necessary because of the collapse of the HC1 tank. Although Mr. Larson discusses various areas and locations at the Plaquemine site, the events that caused damage at the Plaquemine site, and actual damage at that site, his report altogether fails to mention the HC1 tank collapse. Further, his report does not specify which area or location such a tank would have been located in. Consequently, the Court is unable to identify any damage that was caused by the collapse of the HC1 tank.

Second, there is insufficient evidence to support a finding that collapse occurred within Certain Defendants' policy periods. As stated above, based on the definition of "occurrence," as defined in the relevant insurance contracts, the damage that Dow Chemical seeks recovery for must have occurred during the policy period. Thus, in order to be entitled to relief, Dow Chemical must "show that property dam-

---

**7.** The Court notes that although Mr. Larson's report specifically mentions all events that occurred at the Plaquemine, Louisiana, site that could be considered "sudden and accidental" except for the alleged collapse of the HC1 tank in the "early '70s."

age occurred sometime within one or several of the relevant policy periods," and Dow Chemical must present "credible evidence (such as expert testimony) that fairly supports the plaintiff's claims regarding when property damage occurred...." *Gelman Sciences,* 572 N.W.2d at 625. Dow Chemical has failed to make such a showing; there is no evidence that demonstrates that the property damage occurred after June 11, 1971. The only evidence on this point—statements by Mr. Daigre and Ms. McCullough that the collapse occurred in the "early 70s"—is not specific, and cannot support such a finding. The mere fact that there is damage—if there is any at all—does not mean that it necessarily happened within the policy period; it easily could have happened before the policy period commenced and still be consistent with the evidence presented. Therefore, there is no evidence that this damage occurred within the policy period. Dow Chemical is not entitled to relief for the collapse of an HC1 tank that occurred in the "early 70s," and Certain Defendants' motion is GRANTED as to the collapse of the HC1 tank in the "early 70s."

**b. Vinyl II Tank Failures**

■ In 1972, a plant was constructed on Dow Chemical's Plaquemine, Louisiana, site for the production of vinyl chloride monomer; the plant was known as the Vinyl II Plant. The Vinyl II Plant had a number of tanks, which were also built in the 1970s, that were used to store and process ethylene dichloride (hereinafter "EDC"). It was discovered that a number of these tanks had developed leaks, and had gradually released a large quantity of EDC into the groundwater. Dow Chemical contends that one of these tanks was defectively constructed: it had a defective weld that allowed it to leak, and that tank began leaking the first time material was placed in it. A second tank had a similar defective weld that also caused it to leak

from its first use. A third tank had small holes in the floor plates that caused leakage. The leak in the first tank discussed was discovered in 1988, and the leak in the second tank was discovered in 1993, and the leak in the third tank was discovered in 1990. In short, all three tanks had leaked over the course of a number of years.

In its motion, Certain Defendants argued that this discharge of chemicals cannot be "sudden" for purposes of the "sudden and accidental" exception to the pollution exclusion because this discharge occurred gradually over a number of years. As noted above, the Michigan Supreme Court defined "sudden" as having "a 'temporal element that joins together conceptually the immediate and unexpected.' The common everyday understanding of the term 'sudden' is 'happening, coming, made or done quickly, without warning or unexpectedly; abrupt.'" *Upjohn,* 476 N.W.2d at 397–98. Certain Defendants colorfully argued that this release, which occurred over the course of roughly a decade, was not sudden, but gradual.

Dow Chemical counters by arguing that the damage caused from these leaks fall within the "sudden and accidental" exception to the pollution exclusion. Although Dow Chemical concedes that the term "sudden" has a temporal component, the relevant question is whether the initial discharge was "sudden" and unexpected: did the discharge process begin, or commence, in a "sudden" and unexpected manner? Dow Chemical argues that although the leakage occurred over a number of years, the leakage began in a sudden manner; the leak began "suddenly" and unexpectedly when Dow Chemical first poured material into the defective tanks. For support, Dow Chemical points to *Upjohn.* There, a number of pollutants leaked out

of the plaintiff's storage tanks over the course of several weeks. *See Upjohn,* 476 N.W.2d at 394–95. The Michigan Supreme Court held that the release was not "sudden" because the release was not "unexpected" due to the fact that the plaintiff had information from which it could have known about the release. *See id.* at 400–01. Dow Chemical argues that the Michigan Supreme Court did not hold that the release was gradual, and therefore not sudden, because it happened over an extended period of time.

The Court agrees with Certain Defendants for three reasons. First, the Michigan Supreme Court's language in *Upjohn* is explicit: "[t]he common everyday understanding of the term 'sudden' is 'happening, coming, made or done quickly, without warning or unexpectedly; abrupt.'" *Upjohn,* 476 N.W.2d at 397–98. In other words, the Michigan Supreme Court defined "sudden" as being "*both* immediate *and* unexpected." *See Upjohn,* 476 N.W.2d at 399 n. 9. Thus, an occurrence is something that must happen quickly, or be done quickly.

Second, the Court notes that the lower court in *Upjohn* found that a release could be "sudden" despite the fact that it occurred over a number of weeks; so long as the cause was "sudden," then the entire discharge may be considered "sudden." *See id.* at 396. This is the same argument that Dow Chemical asserts, and the same argument that was rejected by the Michigan Supreme Court in *Upjohn. See Matakas v. Citizens Mut. Ins. Co.,* 202 Mich. App. 642, 509 N.W.2d 898, 902 (1993) ("[In *Upjohn,*] [t]he Court expressly overruled the then prevailing view as expressed by this court in *Jonesville Products, Inc. v. Transamerica Ins. Group,* 156 Mich.App. 508, 402 N.W.2d 46 (1986), which concluded that even a continuous discharge of materials could be both sudden and accidental.").

And third, Dow Chemical's definition of "sudden" effectively eliminates the temporal element altogether. According to Dow Chemical, any release can be sudden so long as it is unexpected. The definition of "sudden" that was given by *Upjohn* is not so limited. Therefore, because the release of pollutants occurred gradually over an extended period of time, the Court finds that, by definition, the release was not "sudden," and Certain Defendants motion for summary judgment with respect to the Vinyl II Block is GRANTED.

### c. Conclusion

For the reasons stated above, The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Plaquemine, Louisiana, Focus Site is GRANTED. Because Dow Chemical failed to raise any arguments regarding any other potentially "sudden and accidental" events that had occurred during Certain Defendants' coverage period, the Court finds that Dow Chemical cannot recover on any environmental damage that occurred at the Plaquemine, Louisiana, Focus Site.

### 5. Analysis—Midland, Michigan

There are two groups of events that occurred at the Midland, Michigan, Focus Site that Dow Chemical seeks indemnification for: 1) a benzene pipeline leak that was discovered in 1978, and 2) a number of brine spills that occurred during the entire time that Certain Defendants' insurance policies were in effect. The Court shall discuss the benzene pipeline break first.

### a. Benzene Pipeline Leak in 1978

■ Dow Chemical constructed a number of pipelines that ran between Bay City, Michigan, and Midland, Michigan. One of the pipes, which carried benzene, developed holes and began leaking. The

leak was discovered sometime in March 1978. According to a correspondence between a representative of Dow Chemical, and the Michigan Department of Natural Resources (hereinafter "DNR"), the holes were the result of corrosion. The "benzene had slowly dissolved the foam insulation covering the pipe ... before the benzene reached the surface and was discovered." Letter from J. Anderson to R. Klann, Dec. 21, 1993. Roughly 10,000 gallons of benzene had leak out of two "pinhole" sized holes. *See* Home Insurance Ex. 23.

Certain Defendants argue that Dow Chemical is not entitled to insurance coverage for the benzene pipeline leak. First, Dow Chemical submits no evidence that demonstrates that the leak occurred "suddenly." According to documents created by Dow Chemical, the holes in the pipes were caused by corrosion, and not by a sudden and accidental occurrence. Moreover, the leak very likely occurred over an extended period of time, as 10,000 gallons were able to escape two "pinhole" sized holes. The leak was discovered when benzene was found on the surface of the ground, and spanned nearly a mile underneath the ground.

Certain Defendants also argue that Dow Chemical has not, and cannot, prove how much it incurred in remediation expenses relating to the benzene pipeline leak. Certain Defendants state that Dow Chemical kept account of its remediation expenses at "cost centers." Because this leak did not occur at a Dow Chemical facility, but rather, in a pipe between its facilities, Certain Defendants assert that the remediation expenses for this leak were not accounted for at Dow Chemical's cost center for Midland, Michigan, but rather, were accounted for at a cost center that did not differentiate between expenses for various "miscellaneous" remediation projects. The Court will not consider this argument, however, because it is not necessary; the Court finds that the leak was not sudden and accidental.

The Court finds that the benzene pipe leak was not "sudden." First, the Court notes that the holes were created by corrosion. Although Dow Chemical argues that under *Upjohn,* it is possible that a hole that opened up due to corrosion may be "sudden" if it was unexpected, the Court does not find such an argument persuasive. As stated in its discussion of the Vinyl II Block at the Plaquemine, Louisiana, site, the Michigan courts have defined "sudden" as being "*both* immediate *and* unexpected." *See Upjohn,* 476 N.W.2d at 399 n. 9; *Matakas,* 509 N.W.2d at 903. Second, although it is unknown when the leak itself began, the fact is that 10,000 gallons of benzene, which spanned nearly a mile, leaked through two very small, "pinhole" sized holes. Such a large quantity of material could not have escaped "suddenly." Rather, such a leak would have occurred gradually. In short, neither the holes—which were the product of gradual corrosion—nor the leak itself—which gradually occurred over a period of time—were the result of a "sudden" and accidental event.

For these reasons, Dow Chemical is not entitled to insurance coverage from Certain Defendants regarding the benzene pipe leak that occurred near Dow Chemical's Midland, Michigan, Focus Site in 1978, and Certain Defendants' motion for summary judgment with respect to this occurrence is GRANTED.

### b. Brine Water Spills

Dow Chemical asserts that it is entitled to insurance coverage for a number of accidental brine water spills that occurred at its Midland, Michigan, Focus Site. Brine water has been used for much of the time that Dow Chemical's Midland,

Michigan, facilities have been in operation. At the Midland, Michigan, site, there were a number of wells and underground reservoirs that held brine water; brine water was transferred from these locations to be used in the manufacture of a number of chemicals. The last of the brine water wells was plugged in 1986. Before that time, a number of accidental brine water spills occurred at the Midland facility. These spills have killed vegetation, and caused Dow Chemical to begin remediation efforts. To support its argument that it is entitled to coverage for the brine water spills, Dow Chemical points to the report of its expert witness, Dr. David Hargis, who states that the spills were "accidental," and provides a list of where and when the spills occurred. In addition, Dow Chemical directs the Court's attention to a consent order entered into between Dow Chemical and the Michigan DNR, dated May 3, 1985, where an extensive list of events is also listed. Dow Chemical points out that the consent order characterizes the leaks as "spills," which, it argues, is synonymous with "sudden."

Certain Defendants counter by noting that there is very little information about any individual spills. While Dow Chemical broadly classifies all of the spills as "accidental," Certain Defendants argue that these reports produce no information regarding the specific facts surrounding any particular release, thus it cannot be determined whether any particular leak fits *Upjohn's* definition of "sudden."

The Court agrees with Certain Defendants that there is very little information regarding the specific facts surrounding many of the leaks. As mentioned above, it is presumed that Dow Chemical is not entitled to insurance coverage for any liability that arises out of pollution due to the operation of the pollution exclusion clauses. *See Employers Ins. of Wausau v. Petroleum Specialties,* 69 F.3d 98, 102 (6th Cir.1995). There is little evidence that would allow the Court to find that the brine spills were sudden and accidental. Although Dow Chemical points out that the consent order with the Michigan DNR characterized these leaks as "spills," and "spills" may be defined as "[t]o come to the ground suddenly and involuntarily," WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY, 1120 (1984), this is not the only definition of "spill." "Spill" may also mean "to cause or allow (a substance) to run or fall out of a container." *Id.* This latter definition does not necessarily implicate a spill occurred "suddenly" or "unexpectedly." Furthermore, the consent order does not define spill. The Court is inclined to think that the consent order used "spill" in the latter sense—in other words, allowing a substance to fall out of its container, as opposed to coming to the ground suddenly—because the Michigan DNR would most likely want all "spills" to be remediated, not just ones that occurred "suddenly." Dow Chemical also points out that its expert, Dr. Hargis, stated that all of the spills were "accidental." Even if this is so, it is not determinative of whether any particular spill was "sudden." [8]

Finally, Dow Chemical does not even attempt to demonstrate how the requirements of *South Macomb* were met. In particular, *South Macomb* requires, among other things, for the insured to demonstrate that particular damage is sep-

---

**8.** The Court should note Dow Chemical produces reports that discusses some of the spills. These reports demonstrate that they occurred during the relevant policy period, and that they may have been "sudden and accidental." *See* Investigation of a Brine Spill Site, Dow Chemical Ex. 7. Although these particular spills might survive summary judgment based on the pollution exclusions, they do not survive summary judgment on late notice grounds.

arate and identifiable from a larger pattern of leakage. *See S. Macomb Disposal Auth. v. Am. Ins. Co.*, 225 Mich.App. 635, 572 N.W.2d 686, 706 (1997). It is unknown how many brine water spills would be considered "sudden and accidental," and whether Dow Chemical would be able to present any evidence to demonstrate that the damage caused by those spills would be able to be distinguished from the damage caused by all brine water spills, sudden and accidental or not.

Therefore, the Court finds that Dow Chemical is unable to overcome the presumption that it is not entitled to any coverage. For this reason, Certain Defendants' motion must be GRANTED. Even if Dow Chemical did present such evidence, however, the Court will decide in the next section of this opinion and order that Dow Chemical will be barred from any coverage because of the late notice.

### c. Conclusion

For the reasons stated above, The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Midland, Michigan, Focus Site is GRANTED. The Court finds that the benzene pipe leak was not "sudden and accidental," and therefore Dow Chemical may not recover on its insurance policies. The Court also finds that Dow Chemical cannot overcome the presumption that it is not entitled to insurance coverage.

### C. Timeliness of Notice

The Court shall now consider whether Dow Chemical provide its insurers with timely notice. The following motions will be considered together because they are related: Certain Defendants' Motion for Summary Judgment Based Upon Late Notice; and Dow Chemical Company's Motion for Summary Judgment Concerning Timeliness of Notice.

### 1. Relevant Facts

All of the insurance agreements at issue require Dow Chemical to provide notice to its insurers. All of the insurance agreements have a notice provision that is substantially similar to the following:

> Whenever the Manager of the Insurance Department of the Dow Chemical Company, Midland, Michigan 48640, has information from which the Insured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event the Insured should be held liable, is likely to involve this policy, notice shall be sent to the Company as soon as practicable, provided, however that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which at a later date, would appear to give rise to claims hereunder, shall not prejudice such claim.

*See Dow Chemical Company's Mem. in Support of its Mot. for Summ. J. Concerning Timeliness of Notice*, 3. This language indicates that the giving of notice is a condition precedent to any claim Dow Chemical would have against the insurance companies. Thus, in order for Dow Chemical to be able to go forward on its claims, it must prove that it gave notice of those claims to its insurers "as soon as practicable."

Dow Chemical provided notice of its claims to its insurers in the spring of 1998. Dow Chemical argues that the above quoted notice provision provides that it was not obligated to give Certain Defendants notice of its claims until Dow Chemical itself became aware of any claim against it that would involve the insurance company; in other words, the relevant inquiry is whether Dow Chemical subjectively perceived that one of its insurers would be exposed to liability. In addition, Dow Chemical states that it did not have subjective notice

until 1997. Dow Chemical alleges that environmental statutes enacted in the 1980s took a remedial approach, as opposed to a regulatory approach. *See, e.g.,* 42 U.S.C. § 6942. Thus, Dow Chemical was required to start remedial measures to in order to comply with such statutory enactments. Those remedial measures were allegedly handled at the site level, without the involvement of the corporate insurance or corporate legal departments. Over time, such remedial measures became supervised more closely at the corporate level, until finally, in 1997, the corporate insurance department became aware of the fact that Dow Chemical faced significant liability for the remedial measures it needed to undertake. Dow Chemical evaluated its potential liability over the next year, and gave notice to its insurers of its potential liability in 1998.

Both in its motion and in its response, Certain Defendants agree with Dow Chemical that the notice provision provides that Dow Chemical was required to give notice to its insurers when Dow Chemical believed that its insurers would be exposed to liability. Certain Defendants argue, however, that Dow Chemical clearly had information before it that, at least with respect to the Magnolia Arkansas, and Midland, Michigan, sites, would have allowed them to determine that the insurers were exposed to liability long before 1998. For instance, with respect to the Arkansas site, Certain Defendants state that Dow Chemical began production there in 1965. By 1976, Dow Chemical constructed five ponds on the site: four to manage brine water, and the fifth for fresh water. In addition, other wastewater, including water containing bromine, was stored in the ponds. Dow Chemical divested itself of most of its Arkansas facility in 1987.

With respect to the Midland, Michigan, site, Certain Defendants state that Dow

Chemical began manufacturing chlorinated organic compounds—and releasing chemicals associated with its production into the environment—at that site in the 1930s. These chemicals seeped into the groundwater in the surrounding area. In addition, much of the Midland site houses a Waste Management Unit, as well as a Revertment Groundwater Interception System, which was installed in 1978, in order to capture and treat groundwater containing chlorinated organic compounds before it reaches the river. In 1996, the Michigan Department of Environmental Quality and Dow Chemical performed tests on the soil in surrounding areas, and found that chlorinated organic compounds have reached, and have contaminated, the nearby Tittabawassee River. In short, Certain Defendants conclude that Dow Chemical was aware of the damage that it was inflicting on the Magnolia, Arkansas, and Midland, Michigan, sites well before the time it gave notice to its insurers in 1998, and that this late notice caused Certain Defendants prejudice.

### 2. Legal Standard

 In order to have their motion granted, Certain Defendants must prove that the notice from Dow Chemical was in fact late, and that they were actually prejudiced by the late notice. *See Koski v. Allstate Ins. Co.,* 456 Mich. 439, 572 N.W.2d 636, 639 (1998) (citations omitted); *see also Sudul v. Coregis Ins. Co.,* 2001 WL 633698 *3 (Mich.Ct.App.2001). Conversely, Dow Chemical would need to prove that in fact it gave its insurers timely notice, or, if it did not, that its failure to give timely notice did not prejudice its insurers.

 As for the timing of the notice, the language from the above quoted notice provisions provide that Dow Chemical was required to provide notice to its insurers

when it had information from which it "may reasonably conclude that an occurrence covered hereunder" will likely involve its insurers. Contrary to Dow Chemical's assertions, this does not mean that Dow Chemical was only required to give notice of a claim when it subjectively believed that an insurance company may be involved in a claim; rather, the plain language of the applicable notice provisions indicate that they were triggered when Dow Chemical had information before it from which it *may*—in the sense of "could"—reasonably conclude that it is likely to involve its insurers. The Court would agree with Dow Chemical if the notice provision stated that Dow Chemical was required to give notice to its insurers when Dow Chemical "concludes," or "has concluded" that its insurers may be involved; the notice provision, however, does not contain such language. Instead, the notice provision states that Dow Chemical is required to give notice when it has information from which it "may reasonably conclude" that its insurers are implicated. In other words, there is an objective element to the applicable notice provisions. *See S. Macomb,* 225 Mich.App. 635, 572 N.W.2d 686, 696–97 (1997) (citations omitted) (stating that the word "reasonable" indicates an objective standard). The proper analysis is to determine what information Dow Chemical had before it, and when it had such information. From there, the proper inquiry is whether, based on the information before it, Dow Chemical could have reasonably concluded that one of its insurers would likely be involved.[9] This conclusion is completely reasonable when the purpose behind a notice provision is considered; notice provisions are necessary in order to allow an insurer to defend its legal rights. *See Wendel v.*

*Swanberg,* 384 Mich. 468, 185 N.W.2d 348, 352 (1971) (citations omitted).

The Court notes that Dow Chemical points to *Aetna Cas. & Sur. Co. v. Dow Chemical Co.,* 10 F.Supp.2d 800, 813 (E.D.Mich.1998) for the proposition that Dow Chemical was not required to give notice until it subjectively concluded that a claim was likely to involve one of its insurers. The Court notes, however, that precedent from other judges in this district is not binding on this Court. *See Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991); *U.S. v. Articles of Drug Consisting of 203 Paper Bags,* 818 F.2d 569, 572 (7th Cir.1987); *Starbuck v. City and County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977); and *Herendeen v. Mich. State Police,* 39 F.Supp.2d 899, 911 (W.D.Mich.1999). Therefore, this Court is not bound by the determinations made in *Aetna.* And while *Aetna* provides persuasive analysis on other topics, the Court is unpersuaded by its analysis regarding pollution exclusions.

In addition to proving that late notice was given, Certain Defendants must prove prejudice. To demonstrate that they were prejudiced, Certain Defendants must do more than merely speculate that the may have been prejudiced by the delay; rather, they must show actual material prejudice that was caused by the delay. *See West Bay Exploration Co. v. AIG Specialty Agencies of Tex., Inc.,* 915 F.2d 1030, 1036–37 (6th Cir.1990). Certain Defendants must also show that if any evidence was lost, that it was lost during the time of the delay, and that such evidence was irreplaceable. *See Aetna Cas. & Sur. Co.,* 10 F.Supp.2d at 813–14.

---

**9.** The Court notes that Home Insurance argued that the contractual language dictates an objective standard of notice.

### 3. Analysis—Dow Chemical's Motion regarding Late Notice

■ Dow Chemical argues that, as a matter of law, the Court should find that it did not give late notice to Certain Defendants, and that, as a matter of law, the Court should find that its insurers were not prejudiced. The Court is not persuaded by Dow Chemical's assertion that it did not give late notice. As described above, Dow Chemical alleges that it did not believe that under current statutory law that it would incur remediation costs sufficient to require it to notify its excess insurers until 1997.[10]

The Court is highly skeptical of this assertion. Certain Defendants point out that in 1993, Aetna Casualty & Surety Company filed an action against Dow Chemical and its subsidiaries seeking declaratory judgment on a number of insurance claims that Dow Chemical and its subsidiaries filed. *See* Comp. for Declaratory J. and Jury Demand, *Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 93–CV–73601–DT (E.D.Mich. Aug. 25, 1993). In that complaint, Aetna Casualty & Surety Company alleged that Dow Chemical and its subsidiaries were seeking indemnification for liabilities that arose "in connection with claims, demands, notices and suits against them involving environmental contamination at the sites identified . . . ." Further, according to the complaint in *Aetna Cas. & Sur. Co.*, Dow Chemical and its subsidiaries made claims against not only the primary insurance policies that were issued by Aetna Casualty & Surety Company, but Dow Chemical and its subsidiaries also made claims against the excess insurance policies. Thus, it is apparent that, at least as of 1993, Dow Chemical was aware of the size of the burdens that were being placed upon it by the remedial statutes at issue.[11]

Consequently, it is clear that Dow Chemical incurred vast remediation costs as a result of the contamination it caused at the various sites, yet did not inform Certain Defendants of any of the costs it incurred until 1998. In its defense, Dow Chemical contends until the 1990s, such remediation was handled at the site level, with little involvement from the corporate level. It is clear, however, that by 1991 Dow Chemical had an attorney who advised its risk management group on insurance coverage issues, *see* Dep. of G. Smith, 4–6, other lawyers who advised the company on environmental and administrative

---

10. At this point, the Court notes that, due to the operation of the pollution exclusion clauses, Dow Chemical can only get insurance coverage from Certain Defendants for occurrences during the policy period that were "sudden and accidental." There are only two occurrences that survived that part of the analysis, and both occurred at the Magnolia, Arkansas, site. In discussing the late notice provisions, both parties discuss more than the two occurrences at the Magnolia, Arkansas, site, however. The Court shall not restrict its discussion to those two occurrences, however; rather, the Court shall discuss the motions regarding late notice to their fullest extent.

11. The Court also notes that Home Insurance argued that a number of remedial activities were commenced at its sites long before 1993. In its response to certain interrogatories, Dow

Chemical stated that it seeks coverage for various actions that were brought against Dow Chemical for the Midland, Michigan, site in 1981; against the Plaquemine, Louisiana, and Freeport, Texas, sites by 1984; and against the Magnolia, Arkansas, and Pittsburg, California, site by 1987. In addition, Dow Chemical had a general awareness of the contamination that it caused at the various sites. For instance, Dow Chemical installed a groundwater remediation system at its Midland, Michigan, site in the 1970s because groundwater contamination was affecting nearby waterways; it installed a french drain at its Magnolia, Arkansas, site in the 1970s in order to respond to chloride contamination; and it detected groundwater contamination at its Pittsburg, California, site as early as 1968; at its Freeport, Texas, site by 1982; and at the Plaquemine, Louisiana, site by 1983.

law matters, *see id.* at 8–12, and at least one attorney on its legal staff who dealt solely with the federal pollution remediation statute, *see* Dep. of J. Martin, 56–60. Further, there were attorneys on Dow Chemical's staff that were responsible for drafting reports to the Securities and Exchange Commission, *see* Dep. of C. Van Metre, 593–97, meaning that there was knowledge of the costs spent in remediation. Thus, by at least 1991, Dow Chemical had individuals on its legal staff that would have understood the liability that Dow Chemical was exposed to based upon the contamination discussed above. From this, Dow Chemical could have reasonably concluded that its insurers would be involved in a legal action.

The Court also notes that under Michigan case law, if an employee of a corporation acquires knowledge within the scope of his employment, then that knowledge is imputed to the corporation. *See The Upjohn Co. v. N.H. Ins. Co.,* 438 Mich. 197, 476 N.W.2d 392, 400 (1991). In *Upjohn,* the plaintiff sought insurance coverage for a "sudden and accidental" release of toxic chemicals from an underground storage tank that caused environmental damage. *See id.* at 394–96. The plaintiff's employees had measured the level of the toxic chemicals in the tank, and noticed a decline in the level of toxic chemicals in the tank; this indicated a gradual seepage of toxic chemicals. *See id.* The Michigan Supreme Court held that the gradual seepage could not be found to be "sudden and accidental" because, based on the measurements taken by the plaintiff's employees, the plaintiff had knowledge that the leak was occurring for some time. *See id.* at 400–01. It reasoned that because a corporation only acts through its employees, whenever an employee acquires knowledge within the scope of his employment, it must be imputed to the corporation. *See id.* at 400.[12]

Consequently, whenever one of Dow Chemical's employees, acting within the scope of his employment, learned that a remedial activity needed to be undertaken, that knowledge was imputed to the rest of the corporation. Thus, according to Michigan case law, Dow Chemical had notice of the remedial activities that it needed to undertake long before it gave notice to its insurers. Therefore, the Court finds that Dow Chemical provided late notice.

▇ The Court may still grant Dow Chemical's motion if it finds that Certain Defendants were not prejudiced by the delay. The Court finds, however, that there was prejudice. Home Insurance suggested that Dow Chemical's notice requirement would have been triggered by

---

12. At this time, the Court notes that many of the insurance policies at issue stated that Dow Chemical is only required to give notice of an occurrence "Whenever the Manager of the Insurance Department of the Dow Chemical Company, Midland, Michigan," has the relevant information before him or her. Dow Chemical, however, has an obligation to ensure that its legal duties under the contract are performed in good faith. *See* Restatement (Second) of Contracts, § 205 (1982). Among other duties, Dow Chemical had the good faith duty to inform the Manager of its Insurance Department of whenever an occurrence has taken place. The Manager, however, was not informed of such occurrences. Mr. John Gorte, who worked as both the assistant manager, and the manager, of Dow Chemical's insurance department from 1983 through 1997, stated that he was often not informed of which insurance companies would get notice of an occurrence, rather, such decisions were made by lawyers in Dow Chemical's legal department. *See* Dep. of J. Gorte, 39–40. Therefore, despite the language in the contract, the Manager of Dow Chemical's Insurance Department was not in fact responsible for providing notice. Although Dow Chemical has not raised this argument, it is for this reason that Dow Chemical would be unsuccessful even if it did.

at least 1991. The Court agrees that 1991 is an appropriate starting point; in addition to having conducted a number of remediation efforts by that time, Dow Chemical had a number of individuals in its legal department who monitored remediation efforts. Between 1991 and the time notice was given, Home Insurance notes that Dow Chemical kept poor records of many of its remediation efforts at all of its sites, thus preventing the insurers from determining which costs were reasonable. *See generally* Expert Report of Everett Harry. Home Insurance also points out that one witness who potentially had information about the Midland, Michigan, site had died, *see* Dep. of T. Konechne, 208–29, and that several records regarding the release of chemicals at the Pittsburg, California; Plaquemine, Louisiana; and Freeport, Texas, sites were likely discarded due to Dow Chemical's record retention policy. Home Insurance, along with Certain Defendants, point out that the late notice also prevented the insurers from participating in settlement negotiations regarding the environmental claims that Dow Chemical entered into. Therefore, the Court concludes that the insurers were prejudiced by Dow Chemical's late notice as well.

For the reasons stated above, Dow Chemical Company's Motion for Summary Judgment Concerning Timeliness of Notice is DENIED.

### 4. Analysis—Certain Defendants' Motion regarding Late Notice

The Court now turns its attention to Certain Defendants' Motion for Summary Judgment Based Upon Late Notice. The Court notes once again that this motion only pertains to the Magnolia, Arkansas, and Midland, Michigan, sites, and only to policies issued by Certain Defendants.

As to the Midland, Michigan, site, the Court finds that Dow Chemical was in fact late in providing Certain Defendants with notice. Dow Chemical discussed that a number of brine spills occurred at its Midland, Michigan, location prior to the time Certain Defendants' policies expired. In addition, in Dow Chemical's consolidated response to the motions for partial summary judgment based on the pollution exclusions, it attached a copy of a consent decree between it and the Michigan DNR, dated May 3, 1985. In the consent order, Dow Chemical was required to clean the soil and water that it contaminated by the spillage of brine water, and implement measures to prevent future spills. *See* Dow's Consolidated Opp. to Home's Mots. for Partial Summ. J. on Application of Pollution Exclusions for the Focus Sites, Ex. 8.

Based on this, along with a vast quantity of other evidence reviewed by the Court, it is hard to believe Dow Chemical's claim that its legal department—the entity that in fact provided Dow Chemical's insurers with notice—was not aware of the liability that Dow Chemical was facing before the spring of 1998, when formal notice was given to its insurers. The May 3, 1985, consent decree between Dow Chemical and the Michigan DNR was signed by the General Manager of Dow Chemical's Michigan Division. It is highly unlikely that he would have signed such a decree without first consulting Dow Chemical's legal department. Therefore, by at least 1985, Dow Chemical must have been aware of at least some of the remediation efforts at the Midland, Michigan, focus site. Further, under *Upjohn*, such knowledge is imputed to those responsible for providing notice. Consequently, the Court finds that Dow Chemical failed to provide timely notice to its insurers as to the Midland, Michigan, Focus Site.

The Court also finds that late notice was given by Dow Chemical to Certain Defen-

dants regarding the Magnolia, Arkansas, Focus Site. In Dow Chemical's consolidated response to the motions for partial summary judgment regarding the pollution exclusions, Dow Chemical admits: "Dow first discovered the extent to which Area A–10 was still contaminated with EDB when it performed a Pre–Sale Environmental Assessment of the Magnolia site in April 1987. As a result of this discovery, Dow was required to excavate and remove thousands of pounds of EDB contaminated soils from Area A–10...." In a similar manner, Dow Chemical was aware of the DCBP spill in Area A–19 by April 1987, and was also discussed in the Pre–Sale report. It is highly doubtful that Dow Chemical would contemplate selling a major piece of property without consulting its legal department at some point. Therefore, its legal department would likely have become aware of the contamination present at the Magnolia, Arkansas, around 1987. Therefore, Dow Chemical in fact gave late notice to Certain Defendants regarding the Magnolia, Arkansas, Focus Site, too.

The Court also finds that Certain Defendants were prejudiced. For the aforementioned reasons, Certain Defendants were prejudiced by this late notice; Dow Chemical is asking Certain Defendants to indemnify its remediation efforts, despite the fact that the majority of remediation costs incurred by Dow Chemical were incurred before notice was given to Certain Defendants. In addition, Certain Defendants were totally denied any opportunity to oversee any of those efforts, or to participate in any settlement negotiations. Therefore, the Court finds that Certain Defendants were prejudiced by Dow Chemical's late notice.

For the above stated reasons, the Court finds that Certain Defendants' Motion for Summary Judgment Based Upon Late Notice is GRANTED. Because, as stated above, Dow Chemical was required to give notice to Certain Defendants as a condition precedent to receiving coverage, the Court finds that Dow Chemical in not entitled to any benefits from Certain Defendants for either the Magnolia, Arkansas, site or the Midland, Michigan, site.

## V. CONCLUSION

For the reasons stated above: 1) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Magnolia, Arkansas, Focus Site is DENIED; 2) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Pittsburg, California, Focus Site is GRANTED; 3) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Plaquemine, Louisiana, Focus Site is GRANTED; 4) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Midland, Michigan, Focus Site is GRANTED; 5) The Home Insurance Company's Motion for Partial Summary Judgment: The Application of the Pollution Exclusions to the Freeport, Texas, Focus Site is GRANTED; 6) Certain Defendants' Motion for Summary Judgment Based Upon Late Notice is GRANTED; and 7) Dow Chemical's Motion for Summary Judgment Concerning Timeliness of Notice is DENIED.

IT IS SO ORDERED.